**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HINDS INVESTMENTS, L.P.,
          *Plaintiff-Appellant,*

PATRICIA MCLAUGHLIN, Trustee of
the Thomas F. Hinds and Mary
Jane Hinds Living Trust,
          *Plaintiff-counter-defendant-
                    Appellant,*

v.

ALBERT ANGIOLI; BURNELL ANGIOLI,
          *Defendants,*

and

MULTIMATIC CORPORATION;
MULTIMATIC DRY CLEANING
MACHINE CORPORATION;
MULTIMATIC LLC; KIRRBERG
CORPORATION; HOYT CORPORATION;
R.R. STREET & CO., INC.,
          *Defendants-Appellees,*

9847

TEAM ENTERPRISES, INC.,
            *Defendant-cross-claimant-*
                              *Appellee,*

    v.

CSK AUTO, INC., DBA Kragen
Auto Parts and COOPER INDUSTRIES
LTD,
            *Third-party-defendant.*

No. 10-15607

D.C. No.
1:07-cv-00703-LJO-
GSA

HINDS INVESTMENTS, L.P.,
            *Plaintiff-Appellant,*

PATRICIA MCLAUGHLIN, Trustee of
the Thomas F. Hinds and Mary
Jane Hinds Living Trust,
            *Plaintiff-counter-defendant-*
                              *Appellant,*

    v.

ALBERT ANGIOLI; BURNELL ANGIOLI;
MULTIMATIC CORPORATION;
MULTIMATIC DRY CLEANING
MACHINE CORPORATION;
MULTIMATIC LLC; KIRRBERG
CORPORATION; HOYT CORPORATION;
R.R. STREET & CO., INC.,
            *Defendants-Appellees,*

TEAM ENTERPRISES, INC.,
      *Defendant-cross-claimant-*
                *Appellee,*

         v.

CSK AUTO, INC., DBA Kragen
Auto Parts and COOPER INDUSTRIES
LTD,
       *Third-party-defendant.*

No. 10-15951

D.C. No.
1:07-cv-00703-LJO-
GSA

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
May 13, 2011—San Francisco, California

Filed August 1, 2011

Before: Diarmuid F. O'Scannlain, Ronald M. Gould,
Circuit Judges, and Amy J. St. Eve, District Judge.*

Opinion by Judge Gould

---

*The Honorable Amy J. St. Eve, U.S. District Judge for the Northern District of Illinois, sitting by designation.

**COUNSEL**

Jordan S. Stanzler, Edward R. Firestone, and Melinda Jane Steuer of Stanzler Law Group, Palo Alto, California, for plaintiffs-appellants Hinds Investments, L.P. and Patricia MacLaughlin.

Ian P. Culver of Dongell Lawrence Finney LLP, Los Angeles, California, for defendants-appellees Multimatic Corporation, Multimatic Dry Cleaning Machine Corporation, the Kirrberg Corporation, and Multimatic LLC.

Eric Grant and John B. Thomas of Hicks Thomas LLP, Sacramento, California & Houston, Texas, for defendant-appellee R.R. Street & Co., Inc.

Richard S. Baron, Brian H. Phinney, and Marc P. Lawrence of Foley, Baron & Metzger, PLLC, Livonia, Michigan, and Mandy L. Jeffcoach of McCormick Barstow, LLP, Fresno, California, for defendant-appellee Hoyt Corporation.

---

## OPINION

GOULD, Circuit Judge:

Plaintiffs Hinds Investments, L.P. and Patricia MacLaughlin (collectively, "Hinds") appeal the district court's dismissal of their claims against manufacturers of dry cleaning equipment brought, inter alia, under the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6901 *et seq.*[1] RCRA permits citizen suits against "any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id.* § 6972(a)(1)(B). The district court held that Hinds's allegations that the manufacturers contributed to waste disposal, by the design of machines that generated waste and by the instructions they gave on use of these machines, were insufficient as a matter of law to support a civil action under RCRA because all of the defendant manufacturers' alleged contributions were passive. We affirm. We hold that, for RCRA liability, "contribution" requires more active involvement than was alleged as to the defendant manufacturers.

---

[1]Hinds also appeals the dismissal of its other statutory and common law claims against defendant manufacturers. In a separate memorandum disposition filed along with this opinion, we affirm those rulings.

# I

Hinds owns two California shopping centers, located in Clovis and Fresno, that housed dry cleaning stores and whose groundwater is now contaminated with perchloroethylene ("PCE"), a hazardous substance often used in dry cleaning. Seeking declaratory relief and monetary damages to offset the cost of environmental remediation and clean-up, Hinds sued, among others, the manufacturers of equipment used at the dry cleaning stores. Defendant manufacturers are Multimatic Corporation, Multimatic Dry Cleaning Machine Corporation, Multimatic LLC, and their successor in interest, Kirrberg Corporation ("Multimatic"), manufacturers of the Solo Plus 35 dry cleaning machine; R. R. Street & Co., Inc. ("Street"), the manufacturer of a device known as the Puritan 800 Plus Filter Still ("Still"); and the Hoyt Corporation ("Hoyt"), the manufacturer of a device known as the Hoyt Sniffer ("Sniffer") (collectively, "Defendants").

Hinds alleges that Defendants are liable under RCRA for having "contributed to the past and present handling, storage, treatment, transportation or disposal of hazardous waste," namely PCE. Hinds contends that Defendants "caused and contributed to the release of PCE into the environment . . . . [b]y either operating, providing, installing, maintaining, and/or repairing dry cleaning machinery which was designed so that wastewater contaminated with PCE would and did flow into drains and into the sewer system." In so doing, Multimatic, Street and Hoyt allegedly "made a conscious decision to discharge used PCE" and "arranged for and controlled the disposal of PCE waste."

Hinds alleges generally that Defendants employed faulty machine design and distributed manuals that instructed users that they should dispose of contaminated waste water in drains or open sewers. Specifically, Hinds contends that Multimatic is liable because, in addition to cleaning clothes, its Solo Plus 35 dry cleaning machine allegedly "performed a

second and distinct function of waste disposal," and the machine's instruction manual stated that waste water, which contained traces of PCE, "must flow into an open drain." Hinds alleges that Street's Still, used at the Clovis shopping center to separate off used PCE for reuse, similarly "existed for the purpose of waste removal and disposal." It contends that Street is liable for contamination caused by the use of its Still because Street explained that PCE-containing waste water produced by the Still "may be drained into a container or piped directly to a floor drain." Similarly, Hinds alleges that Hoyt is liable for contamination generated by the Sniffer, which captured emitted PCE from the atmosphere for reuse in dry cleaning, because Hoyt's instruction manual said that drainage of PCE-laden waste water to an open sewer system was the appropriate disposal method.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Multimatic, Street, and Hoyt filed motions to dismiss for failure to state a claim, which the district court granted with prejudice in three separate, but similarly reasoned, orders. The district court held that Hinds's RCRA claims failed to state a claim for relief because they did not allege active involvement by Defendants in handling or disposing of waste, as required for RCRA contributor liability. It concluded that Hinds alleged, at most, passive conduct by Defendants (i.e., the manufacture and sale of their products). The district court entered judgment for Defendants, and Hinds timely appealed.

## II

"We review de novo a district court's decision on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)," *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1072 (9th Cir. 2006), construing the complaint in the light most favorable to the plaintiff and accepting all factual allegations as true, *Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

## III

In society's efforts to constrain or limit environmental pollution that is detrimental to all, RCRA is an important tool and a key federal statute that, if properly enforced, will help preserve our environment from the effects of harmful pollution. "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). Its primary purpose is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.' " *Id.* (quoting 42 U.S.C. § 6902(b)); *see Pakootas*, 452 F.3d at 1078.

**[1]** To achieve this goal, RCRA permits citizen suits against:

> any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

§ 6972(a)(1)(B). RCRA does not itself define what acts of contribution are sufficient to trigger liability, and the issue is a matter of first impression before our court.

**[2]** "Where terms are not defined within a statute, they are accorded their plain and ordinary meaning," which "can be deduced through reference sources, including . . . general usage dictionaries." *Greenwood v. CompuCredit Corp.*, 615 F.3d 1204, 1208 (9th Cir. 2010), *cert. granted*, 79 U.S.L.W. 3627 (U.S. May 2, 2011) (No. 10-948). "Contribute" commonly means to "lend assistance or aid to a common purpose" or to "have a share in any act or effect." *Webster's Third New International Dictionary* 496 (1993). It is also defined as "to be an important factor in; help to cause." *The Random House Dictionary of the English Language* 442 (2d ed. 1987); *see, e.g.*, *Cox v. City of Dallas*, 256 F.3d 281, 294 (5th Cir. 2001) (surveying definitions); *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1384 (8th Cir. 1989) (same).

Hinds urges us to give wide breadth to this definition and hold that defendants may be liable under RCRA when they assist in creating waste but do not actually generate or produce it. Hinds argues that, pursuant to this definition, its allegations sufficiently state a claim for RCRA liability because the facts alleged, if taken as true, would support a finding that Defendants "helped" to dispose of hazardous waste by "design[ing] machines that created and discharged hazardous waste that had to be disposed of," selling machines "for use on someone else's property," and "direct[ing] where and how that waste should be disposed of." We decline to give such an expansive reading to the term "contribute." Instead, and for the reasons elaborated below, we decide that the statutory language permitting suits against "any person . . . who has contributed or who is contributing" to the handling, storage, treatment, transportation or disposal of hazardous waste, § 6972(a)(1)(B), requires that a defendant be actively involved in or have some degree of control over the waste disposal process to be liable under RCRA.

**[3]** The statutory prohibition on "contributing to" speaks in active terms about "handling, storage, treatment, transportation, or disposal" of hazardous waste. *See id.* Handling the waste, storing it, treating it, transporting it, and disposing of it are all active functions with a direct connection to the waste itself. From the language Congress chose, it seems plain that Congress was concerned with those who handle, store, treat, transport, or dispose of the waste, not with manufacturers who design machinery that might generate a waste byproduct that could be disposed of improperly at hazard to the public. Designing machinery that has a purpose helpful to society, like the dry cleaning of clothes, even when that machinery may produce waste as a byproduct, does not render the manufacturer a contributor to waste disposal. "Contributing" requires a more active role with a more direct connection to the waste, such as by handling it, storing it, treating it, transporting it, or disposing of it.

**[4]** Our conclusions above are consistent with those reached by other courts assessing the scope of RCRA contributor liability. For example, in considering a claim that a seller was liable under RCRA for the sale of an asbestos-containing building—on the grounds that the sale of the building allegedly constituted the disposal, handling, and storage of the asbestos contained therein—the Seventh Circuit declined to impose RCRA liability for the seller's passive conduct:

> A plain reading of the "has contributed or is contributing" language of § 6972(a)(1)(B) compels us to find that RCRA requires active involvement in handling or storing of materials for liability. The ordinary meaning of "contribute" is "to act as a determining factor." *Webster's II New College Dictionary* (2005). By definition, the phrase "has contributed or is contributing" requires affirmative action. The vast majority of courts that have considered this issue read RCRA to require affirmative

action rather than merely passive conduct . . . for handling or storage liability.

*Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008). Another court similarly concluded that "a straightforward reading of RCRA compels a finding that only *active* human involvement with the waste is subject to liability under RCRA . . . ." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 844 (D.N.J. 2003), *aff'd*, 399 F.3d 248 (3d Cir. 2005).

Courts that have not explicitly held that RCRA liability requires active involvement by defendants have nonetheless suggested that substantial affirmative action is required and have permitted RCRA claims to survive only with some allegation of defendants' continuing control over waste disposal. In *United States v. Aceto Agricultural Chemicals Corp.*, for example, the court overturned the dismissal of a RCRA claim only after determining that it was reasonable to infer from plaintiffs' allegations that defendants "had authority to control . . . any waste disposal." 872 F.2d at 1383. Likewise, in *Marathon Oil Co. v. Texas City Terminal Railway Co.*, 164 F. Supp. 2d 914 (S.D. Tex. 2001), the court allowed RCRA claims to proceed where plaintiffs alleged that the defendants played a role in environmental contamination of a site by virtue of their control over the practices that caused the contamination. *Id.* at 920—21; *see also United States v. Valentine*, 885 F. Supp. 1506, 1512 (D. Wyo. 1995) (denying summary judgment on the basis that "it is not necessary that a party have control over the *ultimate* decisions concerning waste disposal . . . to be found to be a contributor within the purview of RCRA" and observing that defendant could still pursue as a defense that he "was without control or authority over these waste disposal decisions" (emphasis added)).[2]

---

[2]Hinds cites *Agricultural Excess & Surplus Insurance Co. v. A.B.D. Tank & Pump Co.*, 878 F. Supp. 1091 (N.D. Ill. 1995), for the proposition that RCRA liability may be imposed against manufacturers solely on the

**[5]** We hold that to state a claim predicated on RCRA liability for "contributing to" the disposal of hazardous waste, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process. Mere design of equipment that generated waste, which was then improperly discarded by others, is not sufficient.

**AFFIRMED.**

---

design and production of a product, without further active involvement in waste disposal. There, the district court declined to limit the definition of "contributor" to such an extent so as to foreclose a suit against the maker of an underground storage tank, whose allegedly faulty design and manufacture caused leakage of petroleum into soil and groundwater. *Id.* at 1099-1100. In our view, that case is not persuasive that the manufacturers of dry cleaning equipment here should be liable under RCRA. *Agricultural Excess*, in any event, is distinguishable and reconcilable with our holding, for a manufacturer who produces a faulty product for the express purpose of storing waste might, in some circumstances, be viewed as actively "contributing to the past or present . . . storage . . . of any solid or hazardous waste." § 6972(a)(1)(B).